# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01C6158 | **DATE** | February 14, 2002 |
| **CASE TITLE** | *Allen Brothers, Inc. v. Abacus Direct Corp. n/k/a DoubleClick, Inc.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss the Complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the accompanying memorandum and order, DoubleClick's motion to dismiss [4-1, 5-1] is granted in part and denied in part. Count I stands, but the prayer for injunctive relief in Count I is stricken, and Allen is granted leave–consistent with its obligations pursuant to Fed.R.Civ.P. 11–to replead its prayer for injunctive relief no later than March 5, 2002. Count II is dismissed with prejudice. IT IS SO ORDERED. I

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | FEB 19 2002 date docketed | |
| | Notified counsel by telephone. | | | 21 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ALLEN BROTHERS, INC., | ) |
| | ) |
| Plaintiff, | ) Hon. Blanche M. Manning |
| | ) |
| v. | ) No. 01 C 6158 |
| | ) |
| ABACUS DIRECT CORPORATION | ) |
| N/K/A DOUBLECLICK INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Allen Brothers, Inc. ("Allen") filed a two-count complaint in the Circuit Court of Cook County alleging breach of contract against Abacus Direct Corporation, now known as DoubleClick, Inc. Count I of the complaint seeks an injunction and specific performance, and Count II seeks damages. DoubleClick removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Before the Court is DoubleClick's motion to dismiss pursuant to Fed. R. Civ. P. 12b(6). For the reasons set forth below, the Court grants the motion in part and denies it in part.

### I. Background

The following facts are taken from the complaint and the exhibits attached thereto, and are assumed true for the purposes of ruling on this motion. Plaintiff Allen is a purveyor of fine meats and is one of the leading suppliers of meat products to the nation's better steakhouses and restaurants. As part of its overall sales strategy, Allen promotes itself through catalogues and other marketing campaigns. Over the years, Allen has accrued a substantial database of potential, one-time, and repeat customers. This database has been refined to a point where it is comprised of high-end meat purchasers who spend in excess of $200.00 per order.

Defendant Abacus Direct Corporation, an entity that is now an operating division of

DoubleClick, managed the Abacus Alliance ("Alliance"), a cooperative arrangement whereby catalog companies (Alliance members) provided confidential information regarding their customers' buying habits to Abacus in exchange for access to market research services.

On July 10, 1997, Allen entered into a confidentiality agreement with Abacus for the purpose of Allen's participation in the Alliance. The confidentiality agreement, embodied in a letter signed by representatives of both parties, provided that the confidential information provided by Allen (consisting of customer purchasing histories, direct mail response lists, and other customer information) was not to be used by Abacus "for any purpose not reasonably related to the Company's participation in the Alliance." Furthermore, the agreement stated that it "shall be separately enforceable from all other agreements between the Company and Abacus." In addition, the agreement provided that it should be governed by Colorado law.

About five days later, on or about July 15, 1997, the parties entered into another agreement, entitled "Abacus Alliance Agreement." This agreement set forth Abacus's obligations to Allen and stated that Abacus would assure strict confidentiality and security of Allen's information. It also provided that Abacus would not divulge Allen's confidential information "without [Allen's] permission to any third-party for purposes other than that of the Abacus Alliance." In addition, this agreement stated that:

> Abacus currently licenses data enhancement products to companies that are not competitive with Alliance members. The data enhancement division overlays, for a fee, a variety of generalized buying factors onto direct mailers files. This generalized data does not in any way identify the names of catalogs from which a household has purchased.

This agreement also contained a limitation on liability clause that provided that:

> Both your company and Abacus will not hold each other responsible for any incidental or consequential damages including but not limited to lost profits, lost data, or lost business that may arise from this relationship regardless of the cause.

In Count I of the complaint, Allen alleges that Abacus breached *both* contracts by renting or selling the names of Allen's customers to a mail order list broker, NCRI List Management.

2

NCRI then sold the information to Haute a Home Cuisine, one of Allen's competitors. Neither NCRI nor Haute are Alliance members. Haute used the information to mail catalogs to prospective meat buyers, including Allen's customers.

Allen promptly contacted Abacus and after unsuccessful discussions at trying to amicably resolve the dispute, Abacus informed Allen that it purged Allen's data from its systems. Allen contends that it has suffered irreparable harm from Abacus's distribution of its confidential information to a non-member of the Alliance and subsequent dissemination to a direct competitor. Consequently, it seeks an injunction and specific performance in Count I.

In Count II, Allen realleges the same contracts but seeks damages in excess of $30,000[1] for breach of the confidentiality agreement only. DoubleClick has moved to dismiss the complaint for failure to state a claim on the grounds that 1) there is only one contract and DoubleClick complied with the terms of that contract, 2) Allen is precluded from suing DoubleClick for damages pursuant to a clause in the contract, and 3) Allen is not entitled to an injunction or specific performance because it has failed to plead that it faces a threat of irreparable harm or an inadequate remedy at law.

## II. Standard of Review for Rule 12(b)6 Motion to Dismiss

In evaluating a motion to dismiss, the court's purpose is to determine the sufficiency of the complaint as to whether it properly states a claim upon which relief can be granted, not whether the plaintiff will prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court should not dismiss a claim unless the plaintiff cannot prove any set facts in support of his claim. Hishon v. King & Spaulding, 476 U.S. 69, 73 (1984). In this respect, the court must presume the well-pleaded allegations of the complaint as true and draw all reasonable inferences

---

[1] Although the complaint does not plead $75,000 or more on its face, the defendant has made the requisite showing under Local Rule 81.2 of the Northern District of Illinois for removal to this Court.

3

in the light most favorable to the plaintiff. Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991). However, the plaintiff must allege sufficient facts to satisfy the elements for a cause of action. Glatt v. Chicago Park Dist., 847 F. Supp. 101, 103 (N.D. Ill. 1994). Despite this, the complaint does not need to specify the correct legal theory to survive a Federal Rule of Civil Procedure 12(b)(6) motion, provided that "relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992).

**III. Analysis**

    A.    Breach of Contract

Allen alleges that the parties entered into two separate contracts: the contract embodied in the confidentiality agreement and the contract set forth in the Alliance Agreement. According to paragraph 7 of the complaint, DoubleClick breached both contracts when it sold Allen's confidential information to NCRI, a non-member of the Alliance, who in turn, sold the information to one of Allen's competitors. DoubleClick argues that there was only one contract between the parties, and that the terms of that single contract were embodied in both documents. According to DoubleClick, it did not breach the contract because the disclosure of information to NCRI was permitted under two provisions of the contract: 1) it was "reasonably related to [Allen's] participation in the Abacus Alliance", and 2) the disclosure was to a "compan[y] not competitive with Alliance members."

Under Colorado law, which governs this transaction,[2] when two documents pertaining to the same subject matter are executed by the same parties at essentially the same time, they are to be construed together. See O'Reilly v. Physicians Mut. Ins. Co., 992 P.2d 644, 648 (Colo. Ct. App. 1999) (holding that "if a simultaneously executed agreement between the same parties...is

---

[2]The confidentiality agreement executed on July 10, 1997 provides that Colorado law shall govern any dispute between the parties.

contained in more than one instrument, the documents must be construed together...as though the entire agreement were a single document."); see also E-470 Pub. Highway Auth. v. Jagow, 30 P.3d 798, 801 (Colo. Ct. App. 2001) (holding that "[i]n appropriate circumstances, the parties' intent may be determined by construing together separate documents that pertain to the same subject matter ... This is particularly true of documents executed simultaneously.").

Allen notes that there is a provision in the confidentiality agreement that states that it "shall be separately enforceable from all other agreements." It argues that for the purposes of a motion to dismiss, since it alleges that the two documents are "separate and enforceable," they should be treated that way. The Court disagrees. The issue of whether separate documents are to be construed together or separately constitutes a legal issue rather than a factual one. Colowyo Coal Co. v. City of Colorado Springs, 879 P.2d 438, 443 (Colo. Ct. App. 1994) ("When the evidence of an agreement consists of documents, as here, the determination of their effect is a matter of law.") (citing Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc., 577 P.2d 748 (1978)). And, based on Colorado contract law, the Court finds that the documents should be construed together as one contract.

First, the two documents are part of the same transaction–Allen's participation in the Abacus Alliance. The document containing the confidentiality agreement identifies what type of information Allen will turn over to Abacus while the second document describes the Alliance and sets forth Abacus's duties to Allen. In order to establish the meaning of either document, it needs to be read in conjunction with the other. Second, the documents were executed only five days apart and were signed by the same representatives from each party.

Now that the Court has determined that there is only one contract between the parties, it will proceed to the merits of DoubleClick's motion to dismiss. DoubleClick contends that both counts of the complaint should be dismissed because it did not breach the contract. Alternatively, DoubleClick argues that Count I should be dismissed because Allen failed to

allege that it suffered irreparable harm or had an inadequate remedy at law, and Count II should be dismissed because damages are precluded by a provision in the contract.

According to the terms of the contract, Abacus was to provide "strict confidentiality and security" to Allen's confidential, customer information. Abacus was not to divulge this information to a third-party without Allen's permission unless it was for purposes reasonably related to the Alliance. Allen has alleged that Abacus breached the contract by renting/selling for a fee a list of meat buyer names that included Allen's buyers to NCRI, a mail order list broker. Allen has also alleged that NCRI is not a member of the Alliance and that Abacus failed to take direct action to assure the security of Allen's data. Whether Abacus's dissemination of information to NCRI was reasonably related to Allen's participation in the Alliance is a factual issue that the Court cannot decide on a motion to dismiss.[3]

DoubleClick submits that its disclosure to NCRI was also permitted under the provision in the Alliance Agreement that provides that:

> Abacus currently licenses data enhancement products to companies that are not competitive with Alliance members. The data enhancement division overlays, for a fee, a variety of generalized buying factors onto direct mailers files. This generalized data does not in any way identify the names of catalogs from which a household has purchased.

The Court cannot agree with DoubleClick that this provision clearly allows it to distribute Allen's confidential information to a mail list order broker. Data enhancement by its name, appears to only allow for updated information, and not actually giving a licensee a confidential list of customer names and addresses, as Allen alleges occurred in this case. Accordingly, the Court finds that Allen has sufficiently alleged that Abacus breached the contract.

B.  Count I–Specific Performance or Injunctive Relief

---

[3] Whether Allen will be able to prove that Abacus is liable for NCRI's dissemination of information to one of Allen's competitors is also not for the Court to decide at this point in the litigation.

According to DoubleClick, even if Allen has pled a breach, Count I should be dismissed because Allen has failed to allege that it faces an ongoing threat of injury or that it has no adequate remedy at law. DoubleClick contends that Allen has failed to allege that it suffered an injury, i.e., Allen did not allege that any of its former catalog customers made any purchases from Haute and that Allen admits that DoubleClick destroyed its confidential information so there could not be a threat of future injury. DoubleClick contends that Allen merely states the "magic words" without articulating any factual support. In DoubleClick's view, there needs to be more than the mere disclosure of confidential information to a third party for an injunction to be issued.

To state a claim for an injunction, a plaintiff must plead that there is: (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable harm; (3) that it has no plain, speedy, and adequate remedy at law; (4) granting the preliminary injunction will not disserve the public; and (5) the balance of equities favors the injunction. Baseline Farms Two, LLP v. Hennings, 26 P.3d 1209, 1212 (Colo. Ct. App. 2001). Allen alleges that it has accrued a highly valuable database of confidential, customer information and that it faces a threat of irreparable harm due to Abacus's dissemination to NCRI and NCRI's subsequent dissemination to one of Allen's competitors. Allen asserts that there exists an ongoing threat of injury due to the confidential nature of the information disseminated. Allen then baldly asserts that it does not have an adequate remedy at law and fails to allege the remaining elements of a claim for an injunction. This is insufficient even under the liberal pleading requirements of the federal rules.

The Court does, however, find that Allen has sufficiently pled a request for specific performance, i.e., Allen has alleged: (1) the existence of a valid contract; (2) that it was ready, willing, and able to perform its part of the contract; and (3) that DoubleClick refused to perform its part of the contract.

7

For the foregoing reasons, the Court strikes Allen's prayer for injunctive relief in Count I because Allen has failed to sufficiently plead that it is entitled to an injunction. The Court does find, however, that Allen has sufficiently plead its claim for specific performance; therefore, Count I stands. If Allen wishes to replead its prayer for injunctive relief, and should there exist facts which, if plead, would comport with the elements of injunctive relief, Allen is granted leave within twenty-one days of the entry of this memorandum and order to so replead.

      C.      Count II–Damages

In Count II, Allen alleges the same breach but prays for damages "in the form of lost sales and lost business opportunity." The problem for Allen is that the contract declares that:

> Both [Allen] and Abacus will not hold each other responsible for any incidental or consequential damages including but not limited to lost profits, lost data, or lost business that may arise from this relationship regardless of the cause.

Parties to a contract generally are free to establish the terms of the contract, and it is not for the court to rewrite terms that are unfavorable to one party. Based on the language of the limitation on liability provision of the contract, the Court dismisses Count II of the complaint with prejudice.

## V. Conclusion

For the foregoing reasons, DoubleClick's motion to dismiss [4-1, 5-1] is granted in part and denied in part. Count I stands, but the prayer for injunctive relief in Count I is stricken, and Allen is granted leave–consistent with its obligations pursuant to Fed.R.Civ.P. 11–to replead its prayer for injunctive relief no later than March 5, 2002. Count II is dismissed with prejudice.

Enter:

*Blanche M. Manning* (signature)

Blanche M. Manning
U.S. District Court Judge

Date: February 14, 2002